UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE SHEET METAL WORKERS LOCAL 104 HEALTH CARE PLAN; BOARD OF TRUSTEES OF THE SHEET METAL WORKERS PENSION TRUST OF NORTHERN CALIFORNIA; SHEET METAL WORKERS LOCAL 104 VACATION, HOLIDAY SAVINGS PLAN; ANTHONY ASHER, TRUSTEE,<br><br>       Plaintiffs,<br><br>  v.<br><br>TOTAL AIR BALANCE COMPANY, INC., dba TABCO INC.,<br><br>       Defendant. | No. 08-2038 SC<br><br>DEFAULT JUDGMENT |

### I. INTRODUCTION

Before the Court is the Motion for Default Judgment ("Motion") submitted by Plaintiffs Board of Trustees of the Sheet Metal Workers Local 104 Health Care Plan, et al., ("Plaintiffs"). Docket No. 28. Defendant Total Air Balance Compacy, Inc., d/b/a T A B C O Inc. ("TABCO"), was duly notified of these proceedings, but has not participated. See Certificate of Service, Docket No. 17. An Entry of Default as to TABCO has been filed. Docket No. 25. The Court previously noted that TABCO had not been timely served with either the Complaint or the Amended Complaint. Show-

1  Cause Order, Docket No. 33. The Court ordered Plaintiffs to show
2  cause as to why the suit should not be dismissed on this basis,
3  <u>id.</u>, and the Plaintiffs have submitted a Response, Docket No. 35.
4  The Court concludes that the suit should not be dismissed.
5  For the reasons stated herein, the Court GRANTS Plaintiffs'
6  Motion, and AWARDS Plaintiffs damages, interest, and attorneys'
7  fees and costs in the amount of $32,405.81.

## II.  BACKGROUND

In 1999, TABCO affirmed an agreement with Plaintiffs, binding it to a collective bargaining agreement. Van Den Heuvel Decl.[1] Ex. 1 ("CBA"). Plaintiffs contend that TABCO is bound by the CBA to abide by the Sheet Metal Workers Pension Trust Agreement, Maraia Decl.[2] Ex. 2 ("Trust Agreement"), and the requirements of the Employee Retirement Income Security Act of 1974 ("ERISA"). First Am. Compl., Docket No. 4, ¶¶ 5-6. TABCO is thereby required to make monthly payments to Plaintiffs on behalf of TABCO's employees, in amounts that are determined according to the hours worked by TABCO's employees. <u>Id.</u> ¶ 5.

Starting in September of 2007, TABCO allegedly missed several required contributions, thereby violating the CBA and Trust

---

[1] Mark Van Den Heuvel, business representative of Sheet Metal Workers Local Union No. 104, submitted a declaration in support of the Motion. Docket No. 29.

[2] Bonnie Maraia, fund manager of the Plaintiffs' administrator, submitted a declaration in support of the Motion. Docket No. 30.

2

1  Agreement. See Carroll Decl. in Resp. to Order to Show Cause[3]
2  ("Second Carroll Decl.") ¶ 1. Plaintiffs filed their original
3  Complaint in April of 2008. Docket No. 1. TABCO made
4  contributions for the period specifically described in the
5  Complaint, but failed to make payments due almost immediately
6  thereafter. Plaintiffs amended their Complaint to reflect these
7  changed circumstances. See Am. Compl. ¶ 7. On June 2, 2008,
8  after Plaintiffs had filed their First Amended Complaint, TABCO
9  again paid its overdue contributions. Second Carroll Decl. ¶ 3.
10 However, TABCO continued to miss payment deadlines. TABCO's
11 payment for August of 2008 (due on September 20, 2008) was two
12 days late. See Maraia Decl. Ex. 3 ("Liability Detail Sheet").
13 Then in November of 2008, when the payment for the October 2008,
14 period was due, TABCO allegedly paid $7354.05 less than the total
15 amount due. Second Carroll Decl. ¶ 5. After receiving this short
16 payment, Plaintiffs finally served the First Amended Complaint
17 upon TABCO on December 5, 2008. Id. ¶ 5-6; Certificate of
18 Service. TABCO was thereafter allegedly late in submitting all of
19 its contributions for November and December of 2008, and late in
20 submitting part of its contributions for January of 2009. See
21 Liability Detail Sheet. Plaintiffs now seek a default judgment
22 against TABCO for the liquidated damages and interest incurred
23 from its late contributions.
24 ///
25 ///

---

[3] Michael Carroll, counsel for Plaintiffs, submitted a declaration in response to the Order to Show Cause. Docket No. 35.

## III. <u>LEGAL STANDARD</u>

After entry of default, the Court may enter a default judgment. Fed. R. Civ. P. 55(b)(2). The default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." <u>Id.</u> 54(c). The Court's decision whether to enter a default judgment, while "discretionary," <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980), is guided by several factors. First, the Court must "assess the adequacy of the service of process on the party against whom default is requested." <u>Bd. of Trs. of the N. Cal. Sheet Metal Workers v. Peters</u>, No. C-00-0395, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). If the Court determines that service was sufficient, it may consider the following factors, if present, in its decision on the merits of a motion for default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

<u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." <u>Geddes v. United Fin. Group</u>, 559 F.2d 557, 560 (9th Cir. 1977). Therefore, for the purposes of this Motion, the Court accepts as true the facts as alleged in the First Amended Complaint.

///

## IV. DISCUSSION

### A. Dismissal Under Rule 4(m)

Rule 4(m) of the Federal Rules of Civil Procedure states that, if a defendant is not served within 120 days after a complaint is filed, the district court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). The Rule further states that, should the plaintiff show good cause for the failure to provide timely service, the court "must extend the time for service for an appropriate period." Id. If good cause is later shown, then the "district court may . . . extend time for service retroactively after the 120-day service period has expired." United States v. 2,164 Watches, 366 F.3d 767, 772 (9th Cir. 2004).

Plaintiffs filed their original Complaint with the Court on April 18, 2008, and their First Amended Complaint on May 20, 2008. Docket Nos. 1, 4. However, Defendant was not served until December 5, 2008 -- well after the 120 day deadline set out by Rule 4(m). See Certificate of Service. Thus, absent good cause, the Court must dismiss this action. In determining whether Plaintiffs have shown good cause, the Court has broad discretion, and "may consider factors 'like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service.'" Efaw v. Williams, 473 F.3d 1038, 1041 (9th Cir. 2007) (quoting Troxell v. Fedders of N. Am., Inc., 160 F.3d 381, 383 (7th Cir. 1998)).

The Court concludes that Plaintiffs have shown good cause for

the delay.  For much of the period prior to service, Plaintiffs believed that the suit would not need to be pressed and could be dismissed.  See Second Carroll Decl. ¶ 5.  However, TABCO soon resumed its delinquent behavior, and it again began to accumulate liquidated damages.  See id. ¶ 5; id. Ex. 3.  These facts suggest that late service was not the result of a lack of diligence by the Plaintiffs' counsel.  More importantly, there is no basis for finding that TABCO was prejudiced by the delay, as it was clearly and repeatedly made aware of the suit.  During the period before the Complaint was filed, and then numerous times thereafter, Plaintiffs were in frequent contact with TABCO.  See Carroll Decl. in Supp. of Mot.[4] ("First Carroll Decl.") Ex. 6; Second Carroll Decl. Exs. 1, 2, 3.  These correspondences specifically refer to and cite the current action.  For example, a July 16, 2008 letter bore a subject heading with the name and case number for this action, and attached an order from this Court continuing a case management conference.  Second Carroll Decl. Ex. 1.  These correspondences strongly suggest that TABCO had actual knowledge of the pending suit, and that it was therefore in no way prejudiced by the delay of service.  The Court concludes that Plaintiffs have shown good cause for late service, and will not dismiss the action under Rule 4(m).

**B.   Default Judgment**

1.   Remedy for Post-Complaint Payments

As the facts of this case illustrate, ERISA funds often face

---

[4] Carroll also submitted a declaration in support of the Motion.  Docket No. 31.

something of a moving target when they seek judicial remedies for late or unpaid fund contributions. Plaintiffs here initially brought suit seeking to recover unpaid contributions for September and November of 2007. See Compl. ¶ 7. Only after Plaintiffs filed this suit in April, 2008, did TABCO finally make these payments. See Second Carroll Decl. ¶¶ 1-2. TABCO then immediately defaulted on its contributions for March of 2008, which came due on April 20, 2008. See id. Plaintiffs thereafter amended their Complaint to cover only the March, 2008, contribution, along with "additional monthly amounts [that] may become due during the course of this litigation." First Am. Compl. ¶ 7. On June 2, 2008, less than two weeks after Plaintiffs submitted their First Amended Complaint, TABCO made its contribution for the period of March, 2008. Second Carroll Decl. ¶ 3. TABCO then resumed its practice of submitting late payments. See Id. ¶ 5, Ex. 3. Rather than continue the process of amending their Complaint, Plaintiffs finally served TABCO in December of 2008. Plaintiffs now seek to collect liquidated damages and interest for late payments that have come due between September, 2008, and February, 2009. Mot. at 2-3. In short, TABCO has remedied the controversy specifically described in the First Amended Complaint (the contribution for March, 2008), but has continued to accumulate penalties through subsequent late payments, generally described by the First Amended Complaint as "additional monthly amounts [that] bec[a]me due during the course of this litigation." First Am. Compl. ¶ 7. The question before the Court is therefore whether Plaintiffs can now seek a default

7

judgment to recover liquidated damages that accumulated after the First Amended Complaint was filed, and which were only prospectively described in the First Amended Complaint. See First Am. Compl. ¶ 7.

This case is nearly identical to the facts presented by St. Paul Electrical Construction Industry Fringe Benefits Fund v. Martens Electric Co., 485 F. Supp. 2d 1063 (D. Minn. 2007). In his thorough decision, Judge Schiltz discussed a complaint that had been filed by a pension fund against an employer, which sought to collect on a single delinquent contribution, and which prayed for further relief for "damages related to pension contributions that the employer misses in the future." Id. at 1067. These later-missed contributions were described to the Court in later-filed affidavits, and became the basis for damages sought by the pension fund in its motion for declaratory judgment. Id. at 1063. Judge Schiltz expressed "grave concerns" about whether "a default judgment may be granted for relief that was not specifically described in the complaint and that arose out of conduct that did not occur until *after* the complaint was filed and *after* the defendant decided not to defend." Id. at 1068 (emphasis in original). This Court share's Judge Schiltz's concerns.

In particular, it is questionable whether the Federal Rules of Civil Procedure allow a court to award a judgment by default that grants relief not specifically described in the complaint. See Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). As Judge Schiltz noted, a vague statement in the

8

complaint that suggest the possibility of future liability, coupled with a statement of intent to recover on that liability, cannot generally amount to "a short and plain statement of the claim showing that the pleader is entitled to relief." Martens Electric, 485 F. Supp. 2d at 1068; Fed. R. Civ P. 8(a)(2). Worse yet, giving judicial effect to a vague statement that only portends future liability could potentially result in a failure of due process. Generally, after a plaintiff files a complaint, a defendant has the opportunity to make a calculated decision, based on the scope of his liability, as to whether or not it is in his interest to appear or answer. However, if a plaintiff were permitted to file a complaint that merely describes a vague expectation of continuing and increasing liability, and should the defendant default, then the plaintiff could wait months or even years before moving for default judgment. Should the motion be granted, the defendant could face liability far beyond that specifically described by the complaint. See Martens Electric, 485 F. Supp. 2d at 1067.

In spite of these concerns, Judge Schiltz ultimately granted default judgment in the case before him, because "the protections provided by the Civil Rules, like most other legal protections, can be waived." Id. at 1069. Moreover, the defendant's due process rights were not violated under the facts presented in Martins Electric, because the defendant had been served with all of the papers justifying the pension fund's request and leading up to the final determination. Id. After considering the record, this Court also finds that default judgment as to TABCO is

9

appropriate, given the specific context presented by TABCO's chronically late payments, and the peculiar history of this litigation.

First and foremost, like the pension fund in Martens Electric, Plaintiffs have served TABCO not only with the Complaint and First Amended Complaint, but with many of the subsequent papers that it has filed with the Court, including applications to continue case management conferences, see Docket Nos. 14, 22; see also Second Carroll Decl. Ex. 2, the motion for default, see Docket No. 19, the motion for default judgment with all supporting declarations and attachments, Mot. at 6-7, and even the Plaintiffs' response to the Court's show-cause Order, see Resp. at 4. No Federal Rule requires service of these documents, but having been served, they force the conclusion that TABCO has been kept well apprised of this law suit. The papers that Plaintiffs continually served upon TABCO describe in detail the basis and extent of TABCO's growing liability, and the calculations used to justify it. See, e.g., Liability Detail Sheet. Yet TABCO raised no objection.

Also significant to the Court's decision is TABCO's previous history of intermittent compliance, and in particular the pattern of payment and nonpayment that has occurred since this suit began. Twice during the course of this litigation, Plaintiffs have filed a Complaint with the Court only to have TABCO pay the contributions specifically described by the Complaint, and then subsequently return to its delinquent behavior. See Compl. ¶ 7; First Am. Compl. ¶ 7; Second Carroll Decl. ¶¶ 1-3. The Court

could fairly require Plaintiffs to submit yet another amended complaint, or a supplemental pleading as permitted by Rule 15(d), and to again move for a default under Rule 55(a). However, as the Court has said, TABCO's delinquency has been a moving target. Based on TABCO's previous behavior, the Court recognizes that it is quite likely that the extent and scope of TABCO's delinquency will have changed by the time the amendment or supplementation process had played out, thereby requiring further amendments from the Plaintiffs and further entries of default from court personnel. Rather than allow this process to play out indefinitely, the Court finds it appropriate in this case to consider all damages that had occurred by the time that default was entered against TABCO, and for which TABCO had received fair and full notice from Plaintiffs.

In reaching this conclusion, the Court is not granting an award that "differ[s] in kind from, or exceed[s] in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Although the First Amended Complaint merely includes a prospective description of possible damages, TABCO had notice of this claim and ample time to challenge it. It never did so, despite the fact that it potentially had plausible and compelling grounds for dismissal. This pleading must now "be construed so as to do justice." Fed. R. Civ. P. 8(e). As a party to the CBA and Trust Agreement of the Plaintiffs, and as a contributor to the fund, TABCO had notice of the obligations described in the complaints, and was capable of tracking its liability as the delinquent payments accumulated. It therefore was fully apprised of the

11

scope of liability sought in Plaintiffs' First Amended Complaint, which warned that Plaintiffs would seek "[a]dditional monthly amounts [that] become due during the course of this litigation." First Am. Comp. ¶ 7. The Court finds that it is in the interest of justice to award Plaintiffs' prayer for relief, and will ensure that the award is limited, in kind and in amount, to that generally demanded in the First Amended Complaint.

### 2. Eitel Factors

Having decided that Plaintiffs may pursue remedies for damages accrued after the First Amended Complaint was filed, the Court must now consider whether default judgment is appropriate under the Eitel factors. Accepting the allegations in the Complaint as true, as it must, the Court finds that the Eitel factors favor default judgment. As previously discussed, TABCO has had ample notice of the action, including all claims for liability against it that arose after the First Amended Complaint was filed, and it will not be unduly prejudiced by the entry of a default judgment.

Plaintiffs' substantive claims have merit. Section 502(a) of ERISA gives the participants and beneficiaries of an ERISA-governed pension plan a cause of action in federal court where an employer violates the terms of the plan. 29 U.S.C. § 1132(a)(1)(B), (a)(3). Plaintiffs have further shown that, by failing to make timely contributions, TABCO has violated the terms of the Agreement. Mot. at 3. The sum of money is relatively small -- Plaintiffs are only seeking damages of $30,855.81, to which they are contractually entitled as liquidated damages and

12

interest collected on late contributions. See Mot. at 3. Given TABCO's continued failure to respond to the Plaintiffs' rolling updates for this case, there would likely be no dispute concerning material facts.

TABCO's default was clearly not the result of excusable neglect. As previously noted, TABCO was properly served. Plaintiffs sent notice to TABCO regarding its contribution payments before the suit was ever filed. See First Carroll Decl. Ex. 6. Plaintiffs thereafter continued to correspond with TABCO regarding the litigation. See Second Carroll Decl. Exs. 1, 2, 3. While it is preferable to decide cases on the merits whenever possible, this preference is not dispositive. Where a party fails to defend against a complaint, as TABCO has failed to do here, Rule 55 authorizes the Court to enter default judgment. Kloepping v. Fireman's Fund, No. 94-2684, 1996 U.S. Dist. LEXIS 1786, at *10 (N.D. Cal. Feb. 14, 1996).

**C.  Remedy**

Plaintiffs now seek to recover liquidated damages and interest under the terms of the Trust Agreement. Mot. at 3. The Trust Agreement sets liquidated damages at 20% of the amount of the delinquent payment. See Trust Agreement, Item III § C, Amendment Number Three. Based on information provided to Plaintiffs by TABCO, this amounts to $29,159.27, covering August of 2008 to January of 2009. See Liability Detail Sheet. Plaintiffs further seek interest for the days during which the payments were late, Mot. at 3, which they are contractually entitled to, see Trust Agreement Item III § C. The interest rate

13

1 is set by the Board of Trustees, see Trust Agreement Item III § C,
2 and the current rate is 15% annually, see First Carroll Decl. ¶ 7-
3 8, Ex. 7.  Plaintiffs seek interest in the amount of $1696.54.
4 See Liability Details Sheet.  The Court GRANTS Plaintiffs' request
5 for interest and liquidated damages.

6 Plaintiffs also request attorneys' fees under 29 U.S.C.
7 § 1132(g)(2)(D), which states that upon a judgment in favor of a
8 plan in a suit such as this, the court shall award the plan
9 reasonable attorneys' fees and costs.  Mot. at 4.  Plaintiffs are
10 also entitled to fees under the Trust Agreement.  Trust Agreement,
11 Item 3, § E.  Plaintiffs have submitted a description of their
12 fees and costs totaling $1550.  First Carroll Decl. ¶¶ 2-5.  The
13 Court GRANTS Plaintiffs' request for fees and costs.

## V.   CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs default judgment.  The Court hereby AWARDS Plaintiffs liquidated damages of $29,159.27, interest of $1696.54, plus $925.00 in attorney fees and $625.00 in costs, for a total judgment of $32,405.81.

IT IS SO ORDERED.

June 17, 2009

*[signature]*

UNITED STATES DISTRICT JUDGE

14